## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:22-CR-00360-01 |
| v. | (Chief Judge Brann) |
| OCUFI LAWRENCE, | |
| Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 17, 2023

The Fourth Amendment to the United States Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." When law enforcement falls short of this constitutional requirement, courts are tasked with deciding whether, as in the oft-quoted words of then New York Court of Appeals Judge Benjamin Cardozo, whether "[t]he criminal is to go free because the constable has blundered."[1] In the century since Judge Cardozo famously derided the exclusionary rule—wondering "whether protection for the individual would not be gained at a disproportionate loss of protection for society"[2]—the United States Supreme Court has dictated that the public should not bear the cost of the constable's

---

[1]   *People v. Defore*, 242 N.Y. 13, 21, 150 N.E. 585 (1926).
[2]   *Id.* at 25.

blunder in all but "an exceedingly small set of cases."[3] Mere "blunders" are not enough.[4]

Here, Defendant Ocufi Lawrence claims that the search warrant executed at his residence did not pass constitutional muster and therefore the evidence seized should be suppressed. Though the Court agrees that the warrant was deficient, it finds that the deterrent value of suppression is minimal, and therefore denies Lawrence's request.

## I.   BACKGROUND

### A.   The Informant

The genesis of the search warrant challenged by Lawrence is the Lycoming County Narcotics Enforcement Unit's investigation of Quante Hanes.[5] On September 28, 2021, LCNEU Detective Jonathan Rachael conducted a "buy bust" of Hanes and executed a search warrant at his residence.[6] The search of Hanes' residence uncovered approximately one ounce of crack cocaine, a scale, packing material, and over $3000.[7] Immediately following the execution of that search

---

[3]   *Contra Davis v. United States*, 564 U.S. 229, 259 (2011) (Breyer, J., dissenting) (discussing expansion of the good faith exception).

[4]   *Id.* at 237.

[5]   Aff. of Probable Cause ("Aff."), Doc. 43-1 at 5. Hanes' name is redacted in the copy of the affidavit attached by the Government. *See* Doc. 47-1 at 6. In any case, Hanes' name would have been on the affidavit as supplied to the Magistrate.

[6]   Sept. 6, 2023 Suppression Hr'g. Tr. ("Lawrence Hr'g Tr."), Doc. 55 at 9:4-18.

[7]   Aff. 5

warrant, Rachael interviewed Hanes who related that he had "information regarding a large-scale drug enterprise within the City of Williamsport."[8]

Hanes told Detective Rachael that two individuals known as "Rell" and "Eric" were operating this drug enterprise out of separate apartments located at 2324 West Fourth Street.[9] He said that he had been inside 2324 West Fourth Street "at least 10 times" and that he observed large amounts of cocaine "9 of the 10 times he has been inside the residence."[10] He also stated that on various occasions he had seen firearms in the residence. A month prior, Hanes saw what he believed to be a Ruger handgun in the residence. Two weeks prior, he saw a pump action shotgun in the residence. Two days before the interview with Detective Rachael, he saw a Glock 19 handgun, 3 standard size magazines, and one 1 extended magazine in a cabinet just inside the downstairs door to the residence.[11] On that day, he also saw in excess of 300 grams of cocaine in a small safe in the dining room.[12] Hanes stated that Rell and Eric are partners and only deal to other drug dealers in large amounts.[13] He also stated that he gets his cocaine from Rell and Eric and provided Detective Rachael with Rell's and Eric's phone numbers.[14]

---

[8]   *Id.*
[9]   *Id.*
[10]  *Id.*
[11]  *Id.*
[12]  *Id.*
[13]  *Id.*
[14]  *Id.*

Though Hanes "was unaware exactly how the apartments worked," he told Detective Rachael that "there was a separate entrance for the upstairs that you needed to take a set of steps to, and a separate door on the ground level for the downstairs."[15] Rachel drove with Hanes to the residence where Hanes identified these entrances.[16] Detective Rachael observed only a single house number, 2324, on the front of the residence.[17] However, Hanes warned Detective Rachael that there were multiple surveillance cameras on the property, which limited Detective Rachael's ability to investigate the residence more closely.[18] Detective Rachael's observations were corroborated by other officers on his team who surveilled the residence that day, and body camera footage from the execution of the warrant confirms that 2324 was the only number on the front of the residence.[19] Detective Rachael observed that the building also featured a prominent, street facing storefront.[20] During the suppression hearing, Detective Rachael testified that he believed the storefront was vacant at the time of the search.[21] He further testified that the building at 2324 West Fourth street is a three-story building "if you include the attic."[22]

---

[15]   Lawrence Hr'g Tr. 11:10-14.
[16]   *Id.* 11:14-15, 13:3-8.
[17]   *Id.* 13:9-10.
[18]   *Id.* 13:11-13.
[19]   *Id.* 13:14-22, 19:25-21:21.
[20]   *Id.* 14:16-21.
[21]   *Id.*
[22]   *Id.* 24:9-11.

### B.    The Warrant and the Search

Following his interview of Hanes and surveillance of the residence, Detective Rachael "request[ed] a search warrant of both the upstairs and downstairs apartment of 2324 W. 4th Street, Williamsport, PA, 17701."[23] On the Application for Search Warrant, Detective Rachael described the premises to be searched as: "2324 West Fourth Street, Williamsport, PA 17701. The residence to be searched is a two story, brick, multi-family dwelling."[24] In his affidavit, Detective Rachael stated that the structure at 2324 West Fourth Street "carries 1 mailing address with 2 separate points of ingress and egress despite the fact that Hanes informed me that to the best of his knowledge there is no way to access the upstairs from inside the downstairs."[25] The warrant was approved by Lycoming County District Attorney Ryan Gardner[26] and granted by Magisterial District Judge William Solomon on September 28, 2021, the same day the warrant was served on Hanes at his residence.[27] At 9:22 p.m. that evening, the LCNEU served the warrant on the residences at 2324 West Fourth Street.[28] Though unknown to officers at the time, the upstairs apartment had a separate mailing address, 2326 West Fourth Street.[29] At 2326 West Fourth Street,

---

[23]  Aff. 5.
[24]  Warrant Appl.
[25]  Aff. 5.
[26]  Lawrence Hr'g Tr. 22:11-23:3.
[27]  Warrant Appl.
[28]  Search Inventory, Doc. 43-1 at 6; Def. Br., Doc. 44 at 1.
[29]  Lawrence Hr'g Tr. 43:9-16.

officers seized keys to a safe and a backpack containing $6500.[30] The keys opened a safe in the third-floor attic of 2324 West Fourth Street which contained large amounts of cocaine.[31]

### C.    Procedural Background

Following the search, Lawrence and co-Defendant William Thomas, the resident of the first-floor apartment at 2324 West Fourth Street, were arrested and charged with violations of Pennsylvania law. While their cases were pending in the Court of Common Pleas of Lycoming County, Pennsylvania, Thomas moved to suppress the evidence discovered by law enforcement for lack of probable cause.[32] President Judge Nancy Butts held a hearing[33] and subsequently denied Thomas' motion.[34] Lawrence and Thomas were subsequently indicted by a federal Grand Jury on October 12, 2022.[35] Lawrence was charged with Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. § 846 and Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1).

---

[30]  Mot. to Suppress Supp. Br. ("Def. Supp. Br."), Doc. 56 at 1-2.

[31]  *Id.*

[32]  Thomas Mot. to Suppress, *Pennsylvania v. Thomas*, CP-41-CR-001294-2021, (Pa. Ct. Comm. Pl. Dec. 30, 2021).

[33]  Thomas Hr'g Tr., *Thomas*, CP-41-CR-001294-2021, (Pa. Ct. Comm. Pl. Apr. 25, 2022).

[34]  Op. and Ord. Den. Mot. to Suppress, *Thomas*, CP-41-CR-001294-2021, (Pa. Ct. Comm. Pl. June 2, 2022).

[35]  Indictment, Doc. 1.

Lawrence seeks the suppression of the evidence seized from the search of his apartment.[36] The issue is fully briefed and ripe for disposition.[37]

## II.   LAW

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause." However, "there is no constitutional right to have the evidentiary fruits of an illegal search or seizure suppressed at trial."[38] Rather, the exclusion of such evidence is "a prudential remedy meant to deter law enforcement officials from engaging in unreasonable searches and seizures."[39] Therefore, evidence is only excluded in the rare case in which it would serve to "appreciably deter" future violations of the Fourth Amendment, not to remedy a past violation suffered by the defendant.[40]

Though "real deterrent value is a 'necessary condition for exclusion,'" it alone is insufficient.[41] "Deterrence must also outweigh the 'substantial social costs' of

---

[36]   Mot. to Suppress, Doc. 43.

[37]   Lawrence filed his Motion to Suppress and supporting brief on May 15, 2023. Mot. to Suppress Br. ("Def. Br."), Doc. 44. The Government filed an opposition on June 30, 2023. Mot. to Suppress Opp., Doc. 47. The Court held a hearing on September 6, 2023 and directed the parties to file supplemental briefing following the hearing. Sept. 6 Ord., Doc. 54; Lawrence Hr'g. Trans., Doc. 55. The parties filed their supplemental briefings on October 2, 2023. Def. Supp. Br.; Mot. to Suppress Supp. Opp., Doc. 57.

[38]   *United States v. Katzin*, 769 F.3d 163, 170 (3d Cir. 2014) (en banc).

[39]   *United States v. Caesar*, 2 F.4th 160, 167 (3d Cir. 2021) (citing *Herring v. United States*, 555 U.S. 135, 141 (2009); *Stone v. Powell*, 428 U.S. 465, 482 (1976); *Elkins v. United States*, 346 U.S. 206, 217 (1960)).

[40]   *Katzin*, 769 F.3d at 170; *see also Elkins*, 346 U.S. 217 ("The [exclusionary] rule is calculated to prevent, not to repair.").

[41]   *Davis*, 564 U.S. at 237 (quoting *Hudson v. Michigan*, 547 U.S. 586, 596 (2006)).

exclusion" such as "omitting 'reliable, trustworthy evidence' of a defendant's guilt, thereby 'suppressing the truth and setting a criminal loose in the community without punishment.'"[42] Because exclusion "conflicts with the 'truth-finding functions of judge and jury,' exclusion is a 'bitter pill,' swallowed only as a 'last resort.'"[43] "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."[44] The deterrent value of exclusion therefore "varies with the culpability of the law enforcement conduct."[45] It is stronger in cases of "deliberate, reckless, or grossly negligent conduct" and diminished where law enforcement acts with an "objectively reasonable good-faith belief that their conduct is lawful or when their conduct involves only simple, isolated negligence."[46]

In *United States v. Leon*,[47] the United States Supreme Court "established the 'good faith' exception to the exclusionary rule, which prohibits suppression of 'evidence obtained in objectively reasonable reliance' on a warrant later invalidated for lack of probable cause."[48] "The mere existence of a warrant typically suffices to

---

[42] *Katzin*, 769 F.3d at 171 (quoting *United States v. Leon*, 468 U.S. 897, 907 (1984); *Davis*, 564 U.S. at 237).

[43] *Id.* (quoting *United States v. Payner*, 447 U.S. 727, 734 (1980); *Davis*, 564 U.S. at 237; *Hudson*, 547 U.S. at 591).

[44] *Herring*, 555 U.S. at 144.

[45] *Id.*

[46] *Davis*, 564 U.S. at 238 (citing *Leon*, 468 U.S. at 909; *Herring*, 555 U.S. at 137, 143; *United States v. Peltier*, 422 U.S. 531, 539 (1975)) (internal quotations removed).

[47] 468 U.S. 897 (1984).

[48] *Caesar*, 2 F.4th at 167 (quoting *Leon*, 468 U.S. at 922).

prove that an officer conducted a search in good faith and justifies the application of the good faith exception."[49] The United States Court of Appeals for the Third Circuit has identified the following four "rare circumstances" "in which the good faith exception does not apply:

(1)     Where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2)     Where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;

(3)     Where the warrant was based on an affidavit so lacking in indica of probable cause as to render official belief in its existence entirely unreasonable; or

(4)     Where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized."[50]

## III.   ANALYSIS

In his Motion, Lawrence avers that there are two separate Fourth Amendment violations that justify the suppression of evidence: 1) "[t]he Affidavit of Probable Cause did not provide reliable information that evidence of a crime would be found"

---

[49]   *U.S. v. Hodge*, 246 F.3d 301, 307-308 (3d Cir. 2001) (citing *Leon*, 468 U.S at 922).

[50]   *Caesar*, 2 F.4th at 170 (citing *United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010); *Leon*, 468 U.S. at 923).

at his residence; and 2) that the search of his residence "exceeded the scope of the search warrant."[51] The Court addresses each issue in turn.

## A.    Probable Cause

### 1.    Credibility of Hanes

Lawrence argues that Hanes, the source of the information provided in the warrant was not reliable, the information Hanes provided was not corroborated, and Hanes' claim that Rell and Eric "only dealt with other drug dealers in large amounts was contradictory to the small amount of crack cocaine found in the source's residence."[52] The Government asserts that Detective Rachael "related information from a known (and identified) source that establish probable cause to search both the upstairs and downstairs residence of the structure at 2324 West Fourth Street."[53] The Government argues that "the credibility of the source was enhanced by several factors:"

> First, he was not anonymous, in fact he was identified by name and as such was known to the police and would have subjected himself to charges of false reports had he provided misleading information.
>
> Second, he provided details about the residence, its layout, and specific information about contraband he had seen there including the location of drugs, and the make and model of firearms. . . .
>
> [Third], the source gave information against his own penal interest, including his own possession and drug-related activity with the defendants.[54]

---

[51] Def. Br. 5-6.
[52] *Id.* at 4-5.
[53] Opp. 5.
[54] *Id.* at 5-6.

This Court is required to "pay great deference to the magistrate's [probable cause] determination," "asking only 'whether 'the magistrate had a substantial basis for concluding that probable cause existed.''"[55] It is well established that "probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily."[56] Accordingly, "probable cause may rest upon hearsay, provided there exists 'a substantial basis for crediting the hearsay.'"[57] In *Illinois v. Gates*,[58] the United States Supreme Court abandoned the two-pronged *Aguilar-Spinelli*[59] test which "required proof of the 'veracity' and 'basis of knowledge' of information that was used in an affidavit to obtain a search warrant."[60] "Instead, the Court adopted the totality-of-of the-circumstances test;" whether "'given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[61] "Informants are not presumed to be credible, and the government is generally required to show by the totality of the circumstances either that the informant has provided reliable

---

[55]   *United States v. Williams*, 974 F.3d 320, 350 (3d Cir. 2020) (quoting *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010); *Gates*, 462 U.S. at 238-39).

[56]   *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

[57]   *Torres v. City of Philadelphia*, 673 F. App'x 233, 236 n.3 (3d Cir. 2016) (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

[58]   462 U.S. 213 (1983).

[59]   *Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. U.S.*, 393 U.S. 410 (1969)

[60]   *U.S. v. Woods*, 254 F. App'x 889, 890 (3d Cir. 2007) (citing *Gates*, 462 U.S. at 227-228).

[61]   *Id.* at 891 (citing *Gates*, 462 U.S. at 238).

information in the past or that the information has been corroborated through independent investigation."[62]

Though Detective Rachael testified at the suppression hearing that he drove to 2324 West Fourth Street with Hanes to confirm the location and entrances to the apartments, there is no mention of this field trip in his affidavit. Rather, Detective Rachael's sole contribution to the substance of the affidavit is that "[b]ased on his training and experience [he] know[s] it to be true that drug dealers utilize cell phones to arrange drug transactions."[63] Therefore, while *Gates* cautions that "an informant's veracity, reliability, and basis of knowledge" are only part of the overall "commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place," there is nothing else to consider in this case.[64] The question of whether the information contained in Detective Rachael's affidavit is sufficient to establish probable cause turns entirely on Hanes' credibility.

While the Court agrees that Hanes' detailed first-hand account of the apartments bolsters his credibility,[65] the Government's arguments that his credibility was enhanced because he was known to police and gave information against his own

---

[62]  *U.S. v. Yusuf*, 461 F.3d 374, 384 (3d Cir. 2006).
[63]  Aff. 5.
[64]  *Gates*, 462 U.S. at 230.
[65]  *See Gates*, 462 U.S. at 234 ("Even if we entertain some doubt as to an informant's motive, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand entitles his tip to greater weight than might otherwise be the case.").

penal interest do not find much purchase with the Court. The Court is skeptical that Hanes was particularly concerned about subjecting himself to charges for false statements, given that Hanes was currently under arrest for selling drugs to an undercover officer and law enforcement, executing a search warrant at his home, found an ounce of crack cocaine and other paraphernalia.[66] Hanes' concern rather was "help[ing] himself and help[ing] law enforcement."[67] The Government's suggestion that Hanes gave information against his own penal interest is undermined for the same reasons. Hanes' statement that he purchased his cocaine from somewhere else—essentially an admission that the cocaine did not fall out of the sky—is a transparent attempt by Hanes to help himself by helping law enforcement.[68]

Hanes also lacks many of the typical characteristics of reliable, credible informants.[69] Where there are "valid concerns regarding [an informant's] credibility and the reliability of [his] information," courts ordinarily require "verification and

---

[66]   Lawrence Hr'g. Tr. 9:4-18.

[67]   *Id.* 9:22-23.

[68]   *Contra United States v. Larnerd*, 514 F. Supp. 3d 660, 672 (M.D. Pa. 2021) (finding that there is no reason to doubt the credibility of an informant who "was not under investigation by that officer and [had] initiated the contact with the police department").

[69]   *E.g.*, *U.S. v. Long*, 774 F.3d 653, 659 (10th Cir. 2014) (trustworthiness of informant can be shown by a track record of providing accurate, corroborated information); *United States v. Gondres-Medrano*, 3 F.4th 708, 718 (4th Cir. 2021) (known informant with track record of providing reliable information); *U.S. v. Greenburg*, 410 F.3d 63, 67 (1st Cir. 2005) (repeated in person meetings); *U.S. v. Hunley*, 567 F.2d 822, 825 (8th Cir. 1977) (informant is victim or innocent eyewitness of a crime).

corroboration" of the information provided by the informant.[70] In *Gates*, the Supreme Court observed that its "decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work."[71] The Third Circuit has even declined to hold that information received from a sister governmental agency is *per se* reliable.[72] Though "probable cause can be based solely on information from a reliable, credible informant," Hanes is not such an informant.[73]

### 2.     Good Faith Exception

Though the Court finds that the facts as stated in Detective Rachael's warrant are insufficient to establish probable cause, it does not find that "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[74] The Third Circuit recently extensively discussed this exception in *United States v. Caesar*.[75] *Caesar* begins with the seminal good faith case, *United States v. Leon*,[76] where lower court "suppressed the evidence seized because the warrant application contained no information regarding the informant's reliability or the basis of his statements and accordingly

---

[70]   *See Larnerd*, 514 F. Supp. 3d at 675-76 (finding that concerns regarding credibility and reliability of informant are "outweighed by the verification and corroboration of some of the information she provided").

[71]   462 U.S. at 241.

[72]   *Yusuf*, 461 F.3d at 385.

[73]   *Long*, 774 F.3d at 660 (citing *United States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993); *United States v. Allen*, 211 F.3d 970, 972-76) (6th Cir. 2000) (en banc)).

[74]   *Caesar*, 2 F.4th at 170.

[75]   2 F. 4th 160 (3d Cir. 2021).

[76]   468 U.S. 897 (1984).

failed to satisfy probable cause."[77] The Supreme Court reversed, "not[ing] that the affidavit nevertheless related the details of the officers' 'extensive investigation' and provided much more than a 'bare bones' affidavit."[78] "Since *Leon*, the Supreme Court has further refined the good faith exception, placing the culpability of the officer's misconduct at the center of the deterrence analysis."[79]

Observing that more recent developments "have expanded the reach of the good faith exception and further narrowed the scope of the exclusionary rule,"[80] the Third Circuit emphasized that "the exclusionary rule applies only where the official conduct is 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'"[81] "To trigger the exclusionary rule, law enforcement conduct must be 'deliberate, reckless, or grossly negligent,' or involve 'recurring or systemic negligence.'"[82] "Simple, 'isolated' negligence,' in turn, does not warrant suppression."[83]

Gross negligence has been defined "as the want of even scant care and the failure to exercise even that care which a careless person would use."[84] In

---

[77]   *Id.* (citing *Leon*, 468 U.S. at 905).
[78]   *Id.* (quoting *Leon*, 468 U.S. at 926).
[79]   *Id.* at 169 (citing *Herring*, 555 U.S. at 143; *Davis*, 564 U.S. at 238).
[80]   *Id.* (citing *Davis*, 564 U.S. at 258-59 (Breyer, J. dissenting)).
[81]   *Id.* (quoting *Herring*, 555 U.S. at 143-44).
[82]   *Id.* at 169-70 (quoting *Herring*, 555 U.S. at 144).
[83]   *Id.* (quoting *Davis*, 564 U.S. at 238).
[84]   *Id.* (citing *United States v. Wright*, 777 F.3d 635, 640 (3d Cir. 2015); *Fialkowski v. Greenwich Home for Children, Inc.*, 921 F.2d 459, 462 (3d Cir. 1990)).

determining whether an officer was grossly negligent, a court considers the precautions an officer should take and what might happen if he failed to take them.[85] As discussed above, Detective Rachael's affidavit is deficient because it does not "describe[] a sufficiently detailed investigation."[86] However, during two different suppression hearings, Rachael testified that, after Hanes described the apartments at 2324 West Fourth Street, Detective Rachael and Detective Tyson Havens drove to the premises with Hanes.[87] Rachael drove Hanes around the home twice, and Hanes was able to specifically identify the entrances to the apartments.[88] Rachael also "had other detectives drive around the building multiple times."[89] Given that Hanes cautioned that there were multiple security cameras on the premises, a closer investigation of the building, by Rachael or another detective, was impractical.[90] Nevertheless, Havens "established a surveillance position on the front of the house"[91] prior to the execution of the warrant and, at one point when Thomas left for a brief period, Havens was able to approach the building and peer through the window of the downstairs apartment.[92] Thus, "the affidavit was not merely based on

---

[85] *Wright*, 777 F.3d at 640.

[86] *Caesar*, 2 F.4th at 174.

[87] Thomas Hr'g Tr. 19:16-22; Lawrence Hr'g Tr. 11:25-12:2.

[88] Lawrence Hr'g Tr. 13:3-8.

[89] *Id.* 45:14-18.

[90] *Id.* 13:11-13. The Court notes that, on cross-examination, Rachael agrees that there is no evidence that any security cameras were found on the premises following the execution of the warrant. *Id.* at 28:22-29:13. However, that no cameras were found does not render Detective Rachael's decision to proceed as if there were cameras unreasonable.

[91] Thomas Hr'g Tr. 8:6-8.

[92] *Id.* 9:4-13.

a single uncorroborated . . . tip or an officer's conclusory statement that he believed probable cause existed."[93]

Lawrence makes much of the lack of direct evidence identifying him as Rell or Eric, that Rell or Eric lived at 2324 West Fourth Street, or that evidence of a crime would be found in the upstairs apartment at 2324 West Fourth Street.[94] "'Direct evidence linking the place to be searched to the crime is not required' to establish probable cause."[95] "Rather, probable cause to search for an item 'can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspects opportunity for concealment and normal inferences about where a criminal might hide' the fruits of the crime."[96] As Rachael testified, "[s]treet names are very common in the drug business."[97] "It is reasonable to infer that a person involved in drug dealing on [the] scale [described by Hanes] would store such evidence of that dealing at his home."[98] Rachel also testified his department "has conducted numerous controlled purchases of narcotics in [the] specific area" of 2324 West Fourth Street.[99]

To the extent that Lawrence argues Detective Rachael could have done more, the Court agrees. But that is not the same as finding that Rachael was required to do

---

[93] *Caesar*, 2 F.4th at 174 (citations omitted).

[94] *E.g.*, Def. Br. 6-7.

[95] *Caesar*, 2 F.4th at 174 (quoting *U.S. v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001)).

[96] *Id.* (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).

[97] Thomas Hr'g Tr. 21:16-22.

[98] *Hodge*, 246 F.3d at 306 (collecting cases).

[99] Lawrence Hr'g Tr. 7:2-10.

more.[100] The record shows that Rachael made sufficient efforts to corroborate the information provided to him by Hanes. When drafting the warrant, he sought the guidance of District Attorney Gardner.[101] "[A]fter the fact scrutiny by the courts of the sufficiency of an affidavit should not take on the form of *de novo* review."[102] Though the Court has found that the failure to include the additional investigative steps taken in the affidavit results in an affidavit that does not support a finding of probable cause, excluding the evidence seized during the search of Lawrence's home would have little deterrent effect. Rather, it would result in the exclusion of evidence found as the result of diligent policework.

Further, while not binding on this Court, it is instructive that Lawrence's co-defendant raised the same arguments in the Lycoming Court of Common Pleas where they were rejected by President Judge Nancy L. Butts. In *Leon*, the Supreme Court noted that the divided panel of the [Ninth Circuit] Court of Appeals evidenced that there was "evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause."[103] "In the absence of an allegation that the magistrate abandoned his detached and neutral role," the Court is mindful that two judges have already found that there existed probable cause to

---

[100] *Larnerd*, 514 F. Supp. 3d at 677.
[101] *Massachusetts v. Sheppard*, 468 U.S. 981, 989-91 (1984) (declining to exclude evidence due to a facially deficient warrant after considering the officer's knowledge and actions, including his reliance on the statements of a district attorney).
[102] *Gates*, 462 U.S. at 236.
[103] 468 U.S. at 926.

search 2324 West Fourth Street. Though the air in Williamsport, Pennsylvania may not be as thin as it is on the Ninth Circuit, the Court is nonetheless confident that Judge Butts and Magisterial District Judge Solomon are, at a minimum, sufficiently "thoughtful and competent judges." Though this Court disagrees with Judges Butts and Solomon to the extent that they found probable cause on the face of the warrant, it is not prepared to hold that "no reasonably well-trained police officer could have believed that there existed probable cause" where two judges—and a district attorney—found that it did.[104]

### B.  2324 West Fourth Street

#### 1.  Reasonable Particularity

Even if there is probable cause to issue the warrant, Lawrence argues that the search of his apartment at 2326 West Fourth Street exceeded the scope of the warrant for the "two story brick multi-family dwelling" at 2324 West Fourth Street described in the warrant.[105] The Government argues that the warrant is valid because it "described the structure as it was known or should have been known to the officers after reasonable inquiry under the circumstances."[106]

---

[104]  *Id.*; *see also Tracey*, 597 F.3d at, 152 ("It must be remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers.") (quoting *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985)).

[105]  Def. Br. at 6.

[106]  Gov't Opp. at 8 (quoting *U.S. v. Ritter*, 416 F.3d 256, 266 (3d Cir. 2005)).

"Just as the discovery of contraband cannot validate a warrant invalid when it was issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant."[107] However, once the officers executing a validly issued warrant discover the location is not as described, they have a duty to "either limit the search to those areas clearly covered by the warrant or to discontinue entirely their search" and obtain a new, more particularized warrant.[108] If the officers continue searching, evidence obtained after they knew or should have known the warrant was defective is inadmissible.[109]

On the warrant application, the premises to be searched is described simply:

2324 West Fourth St, Williamsport, PA 17701
The residence is a two-story brick multi-family dwelling.

Though the affidavit includes additional details describing the building, the warrant does not incorporate the affidavit into the premises to be searched.[110] Therefore, for the warrant to pass constitutional muster, the description above must "particularly describe[e] the place to be searched."[111] It does not. The structure at 2324 West Fourth Street is a three-story building[112] that includes a prominent, street

---

[107] *Maryland v. Garrison*, 480 U.S. 79, 85 (1987).

[108] *Id.* at 86-87.

[109] *Id.* at 87-88; *Ritter*, 416 F.3d at 267-68.

[110] *See Tracey*, 597 F.3d at 149 ("[W]e hold that for an affidavit to cure a warrant's lack of particularity, the words of incorporation in the warrant must make clear that the section lacking particularity is to be read in conjunction with the attached affidavit."); *accord Yusuf*, 461 F.3d at 394.

[111] *United States v. Fallon*, 61 F.4th 95, 107 (3d Cir. 2023) (quoting U.S. Const. amend IV).

[112] *See* Gov't Ex. B, Doc. 47-2 (Picture of 2324 West Fourth Street); Thomas Hr'g Tr. 8:9-11 (Detective Havens describing the structure as "a 3-story structure; first, second floor and then an attic); Lawrence Hr'g Tr. 24:4-25:17) (Detective Rachael testifying that the building was a

facing storefront.[113] No reasonable officer could read the description of the building and conclude with "sufficient probability" that the building at 2324 West Fourth Street was, in fact, the building to be searched.[114] Though the address is correct, the differences between the building described in the warrant and the building that sits at 2324 West Fourth Street create more than a "reasonable probability that another premise might be mistakenly searched."[115]

However, the Third Circuit has also recognized an exception to the rule that "words of incorporation in the warrant must make clear that the section lacking particularity is to be read in conjunction with the attached affidavit."[116] An affidavit, even if not incorporated into the warrant, can cure a lack of particularity where "the affidavit accompanied the warrant, and the search was confined to the narrower scope of the affidavit."[117] Each page of the warrant and the affidavit bear the Magistrate's signature and seal, indicating that the affidavit accompanied the warrant.[118] In the affidavit, Detective Rachael "request[s] a warrant for both the

---

three-story structure "if you count the attic"). It is not clear to the Court why one would not "count the attic," just as Detective Havens did. The third-floor window at 2324 West Fourth Street is a full-size window, evidencing a third story with a full height ceiling.

[113] Gov't Ex. B; Lawrence Hr'g Tr. 12:20-13:2.

[114] *Garrison*, 480 U.S. at 87 (quoting *Hill v. California*, 401 U.S. 797, 803-804 (1971)).

[115] *Rodriguez v. Britton*, 2010 WL 889940 at *10 (E.D. Pa. Mar. 8, 2010) (citing *Hickman v. Marzec*, 2008 WL 4279423 at *11 (D. Del. Sept. 18, 2008); *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)). *See generally Solis v. City of Columbus*, 319 F. Supp. 2d 797 (S.D. Ohio 2004) (extensive discussion of the "recurring problem" of officers going to the wrong address in search warrants, including several cases where officers searched homes at addresses identified on the warrant despite clear mismatches in the description of the homes).

[116] *Tracey*, 597 F.3d at 149.

[117] *Id.* (citing *U.S. v. Leveto*, 540 F.3d 200, 211 (3d Cir. 2008)).

[118] *See generally* Warrant Appl. and Aff.

upstairs and downstairs apartment of 2324 West Fourth Street" and the officers did limit their search to the apartments.[119]

Alas, the description in the affidavit would provide a reasonable officer with no more assurance that the building at 2324 West Fourth Street is the correct building. Regarding 2324 West Fourth Street, Detective Rachael states in his affidavit:

> Based on all information and belief this structure carries 1 mailing address with 2 separate points of ingress and egress despite the fact that Hanes informed me to the best of his knowledge there is no way to access the upstairs from inside the downstairs. Due to this information, I am requesting a search warrant for both the upstairs and downstairs apartment of 2324 West Fourth Street Williamsport, PA 17701.[120]

Combined with the description from the warrant, Detective Rachael describes 2324 West Fourth Street as a two-story, multi-family building with an upstairs apartment and a downstairs apartment, and two separate points of ingress and egress. There is also still no mention of the third floor of the building, or the prominent, street facing storefront. Indeed, the description of a multi-family building with "an upstairs apartment" and a "downstairs apartment" conjures an image of a two-story building, with one apartment per floor. Further, the building has *three* separate points of ingress and egress, not two as stated in the affidavit.[121]

---

[119] Aff. 5.
[120] Aff. 5.
[121] Gov't Ex. B; Lawrence Hr'g Tr. 43:17-44:3. This also does not count the entrance to the storefront as a point of ingress and egress.

The Government suggests that the Court should pay no mind to the presence of the storefront at 2324 West Fourth Street and its absence from the description because the officers did not search that area of the building.[122] That puts the cart before the horse. The failure to mention the storefront in the description of the building is significant because it raises the risk that the officers will search the wrong building. Even if the Court did forgive the failure to mention the storefront, the description of the building is still inaccurate as it miscounts the number of floors and the number of doors, both basic features of any building. The Government's argument that the officers did not exceed the scope authorized by the warrant requires that the warrant was valid. It was not.

### 2. Good Faith Exception

The Third Circuit has explained that "officers are usually at least grossly negligent if a warrant is so facially deficient that it fails to particularize" the place to be searched."[123] However, this is not a categorical rule, and "even if a warrant is facially invalid, an assessment of the officers' culpability and the value of deterrence may counsel against suppression."[124] "'[T]he value of deterrence depends on the strength of the incentive to commit the forbidden act,'" so "it makes sense to consider (1) the extent to which the violation in this case undermined the purposes

---

[122] Lawrence Hr'g Tr. 54:24-55:17.
[123] *United States v. Graves*, 751 F. App'x 161, 164 (3d Cir. 2018) (citing *Wright*, 777 F.3d at 639; *Tracey*, 597 F.3d at 151; *Franz*, 772 F.3d at 144-47.)
[124] *Wright*, 777 F.3d at 639.

of the Fourth Amendment and (2) what the Government gained from the violation."[125] There is no dispute that the search of Lawrence's apartment uncovered valuable evidence, thus the inquiry here turns on the extent to which the violation undermined the purposes of the Fourth Amendment. The particularity requirement serves a number of purposes including: (1) written assurance the Magistrate found probable cause to search the area described; (2) preventing general searches; and (3) informing the subject of the search of the lawful authority of the executing officer, his need to search, and the limits of his power to search.[126]

*First*, setting aside for a moment the deficient description of the building, it is clear from the warrant and accompanying affidavit that the Magistrate found probable cause to search the homes of Lawrence and Thomas, identified in the affidavit as Rell and Eric. *Second*, this was no general search. Detectives Rachael and Havens drove to 2324 West Fourth Street where Hanes identified the building and the entrances to the apartments. Havens then established a surveillance position outside of the residence and eventually directed the officers executing the search warrant to the rear entrances of the building identified by Hanes.[127] *Third*, the affidavit, detailing a large-scale drug operation, clearly states the need for the search.

---

[125] *Id.* at 640 (quoting *Hudson*, 547 U.S. at 596).

[126] *Id.* (citing *Groh v. Ramirez*, 540 U.S. 551, 560-61 (2004); *Tracey*, 597 F.3d at 146).

[127] Thomas Hr'g Tr. 10:10-11:9. *See Wright*, 777 F.3d at 640 (finding that it is not a "general search" where an agent oversaw a search and assured that the officers acted in accordance with its limits).

It is also sufficient to inform Rell and Eric of the authority to search their homes for drugs, paraphernalia, and firearms.

Returning to the deficient description of the building, both Havens and Rachael, who supervised the search and drafted the warrant respectively, knew which building, and the areas of that building, that they were seeking to search. Havens, in directing the search, cannot be said to have acted with gross negligence. Rachael, who reached out to District Attorney Gardner for guidance on how to describe the building, cannot be said to have acted with gross negligence. Rachael testified that Gardner "suggested [Rachael] add the verbiage in my Affidavit [in the paragraph beginning with] based on all of my information and belief."[128] That Rachael did not receive particularly helpful advice from the District Attorney in this instance—the phrase "on all information and belief" is not an incantation that renders all that comes after it legally sufficient[129]—does not mean he is not entitled to rely on that advice or that the Court should deter him from seeking it.[130] As Detectives Havens and Rachael "took every step that could reasonably be expected of them," any deterrent value of exclusion here would be marginal, and is therefore not justified.[131]

---

[128]   Lawrence Hr'g Tr. 22:19-22.

[129]   The Court assumes that this phrase, a favorite of attorneys, was Gardner's contribution. Not only is it practically meaningless, it also understates the basis for Rachael's description of the premises, which was his first-hand knowledge, not mere belief.

[130]   *Tracey*, 597 F.3d at 152 (citing *Cardall*, 773 F.2d at 1133).

[131]   *Id.* at 154 (quoting *Sheppard*, 468 U.S. at 989 (1984)).

### 3.      Address Mismatch

Having determined that the deficient description of the building at 2324 West Fourth Street does not warrant suppression, the Court turns to Lawrence's argument that the description of the premises to be searched is insufficient for the additional reason that the address of his apartment is 2326 West Fourth Street, not 2324 West Fourth Street. In its initial brief and during the suppression hearing, the Government did not dispute that the address of Lawrence's apartment is 2326 West Fourth Street.[132] In its supplemental brief, the Government now argues that Lawrence has not carried his burden to "establish[] that there is a separately numbered dwelling at 2326 West Fourth Street in which he holds a privacy interest."[133] The Government suggests that "the best evidence that 2326 West Fourth Street was a separate apartment with a separate address that belonged to Ocufi Lawrence would have been a lease, a utility bill, or even the postal check referenced during cross examination."[134]

During Thomas' suppression hearing, Lycoming County Assistant District Attorney Matthew Welickovitch noted that "Mr. Lawrence will have a different argument with regard to the address" due to the "fact that there was a different

---

[132] *E.g.*, Lawrence Hr'g Tr. 43:9-16 (Detective Rachael testifying that he is "aware that the bottom [apartment] is 2324 and the upstairs [apartment] is 2326").
[133] Supp. Opp. Br., Doc. 57 at 8.
[134] *Id.* at 9.

address with [his] apartment."[135] Though it theoretically possible that the upstairs apartment at 2324 West Fourth Street was given its own street number in the six months between the date of the warrant and Thomas' suppression hearing, the Court believes that possibility is remote enough that Lawrence has sufficiently carried his burden without producing documentation, assuredly long since disposed of, identifying his address as of the date of the search.

Nevertheless, an address mismatch is not grounds to suppress evidence provided that the premises is otherwise described with particularity.[136] If Detective Rachael knew, or should have known, that the apartments in the building at 2324 West Fourth Street carried separate mailing addresses, he would have been obligated to describe each apartment separately on the warrant or obtain two separate warrants.[137] Detective Rachael testified, and body camera footage from the search showed that there was only one street address on the front of the building.[138] In the absence of any evidence that law enforcement learned prior to or during their search that Lawrence's address was 2326 West Fourth Street, the Court will deny Lawrence's motion.[139]

---

[135] Thomas Hr'g Tr. 32:1-11. As the Court discussed above, whether the affidavit of probable cause "sets out enough of a description" is unavailing where the affidavit is not incorporated into the warrant.

[136] *U.S. v. Vega-Figueroa*, 234 F.3d 744, 756 (1st Cir. 2000) (holding that a warrant is valid if the location is described with sufficient particularity despite an address mismatch).

[137] *See Garrison*, 480 U.S. at 85.

[138] Lawrence Hr'g Tr. 17:2-22:10.

[139] *Cf. United States v. Garner*, 2023 WL 3794513, at *7 (M.D. Pa. June 2, 2023) (citing *Ritter*, 416 F.3d at 267-68; *Garrison*, 480 U.S. at 87-88) (suppressing evidence obtained after officers knew or should have known of a discrepancy between addresses in a multi-unit dwelling).

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Lawrence's Motion to Suppress

Evidence.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge